IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANTHONY MAGGIO,

          Plaintiff,

      v.

STEVE SHELTON, LINDA
GRUENWOLD, and JOHN MICHAEL
JEREMY ANDERSON,

          Defendants.

Case No. 2:14-cv-01682-SI

OPINION AND ORDER

Lynn S. Walsh, 209 SW Oak Street, Suite 400, Portland, OR 97204. Of Attorneys for Plaintiff.

Rod K. Norton and Michael G. Jacobs, HART WAGNER LLP, 1000 SW Broadway, 20th Floor, Portland, OR 97205. Of Attorneys for Defendant John Michael Jeremy Anderson, D.O.

**Michael H. Simon, District Judge.**

       Anthony Maggio ("Plaintiff") brings this action against John Michael Jeremy Anderson,

D.O., Steve Shelton, M.D., and Linda Gruenwold, N.P. (collectively "Defendants"). Before the

Court is Dr. Anderson's motion to dismiss Plaintiff's claims against him, both under Federal

Rule of Civil Procedure 12(b)(1) and 12(b)(6). Dr. Anderson also moves, in the alternative, to

"remand" Plaintiff's state law claims to the Umatilla County Circuit Court.[1] Dkt. 35. For the

reasons that follow, Dr. Anderson's motion and alternative motion is denied.

## STANDARDS

### A. Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, --- U.S. ---, 133 S.

Ct. 1059, 1064 (2013) (citation omitted). As such, a court is to presume "that a cause lies outside

this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting

jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations

omitted); *see also Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Safe Air for*

*Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A motion to dismiss under Federal

Rule of Civil Procedure 12(b)(1) for lack of "subject-matter jurisdiction, because it involves a

court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535

U.S. 625, 630 (2002). An objection that a particular court lacks subject matter jurisdiction may

be raised by any party, or by the court on its own initiative, at any time. *Arbaugh v. Y&H*

*Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(b)(1). The Court must dismiss any case over

which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

---

[1] Dr. Anderson does not move in the further alternative for summary judgment.
Dr. Anderson did, however, submit two sworn declarations in support of his motion to dismiss.
Dr. Anderson states in his declarations that he did not perform medical services for Plaintiff
pursuant to a contract with any Oregon agency, that he performed medical services in his own
offices, and that he used his own independent professional medical judgment. Dr. Anderson cites
to these declarations only in support of his motion to dismiss under Rule 12(b)(6). Submission of
evidence outside of the facts alleged and documents referenced in a complaint is not appropriate
under Rule 12(b)(6). The Court declines, however, to convert this motion to a motion for
summary judgment. Plaintiff's Amended Complaint alleges that the services were performed in
Dr. Anderson's office, so Dr. Anderson's declaration to that effect is superfluous. Plaintiff did
not allege one way or the other as to whether Dr. Anderson had a contract with the state or used
his independent medical judgment. But even assuming those two facts are true as stated by
Dr. Anderson, they do not affect the Court's decision.

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be either "facial" or "factual." *See Safe Air for Everyone*, 373 F.3d at 1039. A facial attack on subject matter jurisdiction is based on the assertion that the allegations contained in the complaint are insufficient to invoke federal jurisdiction. *Id.* "A jurisdictional challenge is factual where 'the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.'" *Pride v. Correa*, 719 F.3d 1130, 1133 n.6 (9th 2013) (quoting *Safe Air for Everyone*, 373 F.3d at 1039)). When a defendant factually challenges the plaintiff's assertion of jurisdiction, a court does not presume the truthfulness of the plaintiff's allegations and may consider evidence extrinsic to the complaint.[2] *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012); *Robinson*, 586 F.3d at 685; *Safe Air for Everyone*, 373 F.3d at 1039. A factual challenge "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) (citation and quotation marks omitted).

**B.  Failure to State a Claim**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint

---

[2] Dr. Anderson did not submit any extrinsic information relating to his motion to dismiss under Rule 12(b)(1).

"may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## BACKGROUND

Plaintiff, an inmate at the Two Rivers Correctional Institution ("TRCI") in Umatilla, Oregon, fractured his distal fourth metacarpal bone in his hand. On May 14, 2013, Plaintiff's primary care provider at TRCI, Linda Gruenwald, NP, referred Plaintiff to Dr. Anderson. Plaintiff alleges that ODOC refers many patients to Dr. Anderson.

On May 23, 2013, TRCI brought Plaintiff to Dr. Anderson's office for a consultation. Dr. Anderson recommended that Plaintiff undergo surgery to repair his fracture. Dr. Anderson assured Plaintiff that he had performed this type of surgery many times.

Dr. Anderson performed surgery on Plaintiff's hand on May 28, 2013. At that time, Dr. Anderson inserted pins into Plaintiff's hand. On July 1, 2013, Plaintiff saw Dr. Anderson in his office for pin extraction. According to Plaintiff, Dr. Anderson said the pin extraction would

take 10 to 20 seconds[3], but instead it took three hours. During the pin extraction, after approximately two hours and numerous shots, Dr. Anderson stated that he could not find the pins. Dr. Anderson erroneously stated in his records that the pin extraction procedure took 20 minutes.

Plaintiff also alleges that the pin extraction was performed improperly, and after the pins were removed, he suffered significant scarring, severe pain, and loss of some functioning in his hand. Plaintiff made several complaints regarding wrist pain to medical staff at TRCI. During the next ten months, Plaintiff was not referred to a hand specialist or any other type of medical doctor.

On April 9, 2014, Plaintiff saw another medical practitioner, Dr. Vrieson, who informed Plaintiff that Dr. Anderson was not a hand specialist. Plaintiff then filed a grievance, complaining of continued pain in his hand and asking to be seen by a hand specialist. Plaintiff's grievance was denied by TRCI staff as being beyond the 30-day filing deadline. Plaintiff then filed a complaint with the Oregon Board of Medical Examiners ("Board") regarding Dr. Anderson. The Board sent Dr. Anderson a "letter of concern."

The Oregon Department of Corrections ("ODOC") Therapeutic Levels of Care ("TLC") Committee approved sending Plaintiff for an orthopedic consult. Nurse Gruenwald referred Plaintiff back to Dr. Anderson. Plaintiff objected that Dr. Anderson was not an appropriate choice for follow-up treatment because of Plaintiff's complaints about Dr. Anderson's previous treatment. Nonetheless, TRCI had Plaintiff see Dr. Anderson, who recommended that Plaintiff be referred to a hand specialist. The TLC Committee denied sending Plaintiff to a hand specialist.

---

[3] Plaintiff's Amended Complaint alleges the procedure was supposed to take 10 to 20 "seconds." It is unclear whether this is a scrivener's error and Plaintiff meant to allege that the extraction was supposed to take 10 to 20 "minutes."

Plaintiff alleges that the TLC Committee improperly considered that Plaintiff had only one year remaining on his sentence and balanced that against the high cost of the recommended procedure when the TLC Committee declined to provide Plaintiff with necessary medical treatment.

## DISCUSSION

Against Dr. Anderson, Plaintiff asserts a claim under 42 U.S.C. § 1983, alleging that Dr. Anderson violated Plaintiff's Eighth Amendment rights by acting with deliberate indifference to Plaintiff's medical needs. Plaintiff also alleges against Dr. Anderson a state law claim for negligence. Dr. Anderson moves to dismiss these claims, arguing: (1) Plaintiff cannot state a Section 1983 claim against Dr. Anderson because he was not acting under color of state law; (2) Plaintiff's negligence claim does not arise under the constitution, laws, or treaties of the United States, and the Court therefore does not have subject matter jurisdiction over this claim; and (3) the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law negligence claim. Additionally, Dr. Anderson moves to "remand" the claims against him to Umatilla County Circuit Court.

### A. Plaintiff's Section 1983 Claim Against Dr. Anderson

Dr. Anderson argues that Plaintiff fails to state a claim under Section 1983 against Dr. Anderson because he is not a state actor and because Plaintiff's allegations amount to no more than medical negligence, which does not support a claim under Section 1983.

#### 1. State actor

To state a claim for liability under 42 U.S.C. § 1983, "a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012) (quotation marks and citation omitted). The requirement under Section 1983 that the challenged conduct be taken "under color of state law"

is the same as the "state action" required for conduct to be subject to the Fourteenth Amendment. *See Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 928-29 (1982). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quotation marks and citations omitted); *see also Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010).

A private individual may, under certain circumstances, be considered to be acting under color of state law. In considering whether a defendant may fairly be said to be a state actor, the Ninth Circuit recognizes "at least four different criteria, or tests, used to identify state action: (1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (quotation marks and citations omitted).

Plaintiff argues that Dr. Anderson is a state actor under the "public function" test. The Ninth Circuit has described the public function test as follows:

> Under the public function test, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations. The public function test is satisfied only on a showing that the function at issue is both traditionally and exclusively governmental.

*Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 924 (9th Cir. 2011) (quotation marks and citations omitted).

The Supreme Court has analyzed whether a doctor contracted by a prison to perform medical services on inmates was a "state actor," holding:

> The Court recognized in *Estelle* [*v. Gamble*, 429 U.S. 97 (1976)]: "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." 429 U.S. at 103. In light of this, the Court held that the State

has a constitutional obligation, under the Eighth Amendment, to provide adequate medical care to those whom it has incarcerated. *Id.* at 104. *See also Spicer v. Williamson*, 191 N.C. 487, 490, 132 S.E. 291, 293 (1926) (common law requires North Carolina to provide medical care to its prison inmates), cited in *Estelle*, 429 U.S. at 104, n. 9. North Carolina employs physicians, such as respondent, and defers to their professional judgment, in order to fulfill this obligation. By virtue of this relationship, effected by state law, Doctor Atkins is authorized and obliged to treat prison inmates, such as West. He does so "clothed with the authority of state law." *United States v. Classic*, 313 U.S. at 326. He is "a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. at 937. It is only those physicians authorized by the State to whom the inmate may turn. Under state law, the only medical care West could receive for his injury was that provided by the State. If Doctor Atkins misused his power by demonstrating deliberate indifference to West's serious medical needs, the resultant deprivation was caused, in the sense relevant for state-action inquiry, by the State's exercise of its right to punish West by incarceration and to deny him a venue independent of the State to obtain needed medical care.

*West v. Atkins*, 487 U.S. 42, 54-55 (1988) (footnotes omitted).

Dr. Anderson argues that because, unlike the physician in *West*, Dr. Anderson did not

contract directly with a state agency, he should not qualify as a state actor for purposes of

Section 1983 liability.[4] In *West*, however, the Supreme Court did not rely on the particular

contractual arrangement that the physician had with the state, but instead emphasized the

*function* of the physician.

It is the physician's *function* within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State. Whether a physician is on the state payroll or is paid by contract, the dispositive issue concerns the *relationship among the State, the physician, and the prisoner.* Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's

---

[4] Plaintiff does not specifically allege whether Dr. Anderson was paid for his services. Plaintiff's Amended Complaint implies that Dr. Anderson was paid for his services by ODOC and that Dr. Anderson's services were less expensive than the services of a hand specialist.

> prisoners of the means to vindicate their Eighth Amendment rights.
> The State bore an affirmative obligation to provide adequate
> medical care to West; the State delegated that function to
> respondent Atkins; and respondent voluntarily assumed that
> obligation by contract.

487 U.S. at 55-56 (emphasis added) (footnote omitted). This emphasis on the *function* performed

by the physician as opposed to the physician's contractual relationship with the state was further

discussed by the Supreme Court:

> It is the physician's *function* while working for the State, not the
> amount of time he spends in the performance of those duties or the
> fact that he may be employed by others to perform similar duties,
> that determines whether he is acting under color of state law. In the
> State's employ, respondent worked as a physician at the prison
> hospital fully vested with state authority to fulfill essential aspects
> of the duty, placed on the State by the Eighth Amendment and
> state law, to provide essential medical care to those the State had
> incarcerated.

*Id.* at 56-57 (emphasis added) (footnote omitted).

Expanding upon the Supreme Court's holding in *West*, the Fourth Circuit held that

private physicians that treat prisoners act under color of state law for purposes of Section 1983

liability, "[r]egardless of the physician's employment relationship with the state." *Conner v.

Donnelly*, 42 F.3d 220, 225 (4th Cir. 1994). The Fourth Circuit in *Conner* began its analysis with

the Supreme Court's statement in *West* "that the provision of medical services to prison inmates

is traditionally the exclusive prerogative of the state." *Id.* at 224; *see West*, 487 U.S. at 55-56.

The Fourth Circuit concluded that the nature of the physician's employment relationship with the

State in no way affected this finding because the "physician's *function* within the state system is

the same" regardless of the physician's employment status. *Conner*, 42 F.3d at 225 (emphasis

added).

Noting that the *West* court's concern that a state agency should not be able to avoid

constitutional liability by contracting out services that it is constitutionally obligated to provide,

PAGE 9 – OPINION AND ORDER

the court in *Conner* concluded that "it follows that the state should not be able to relieve itself of its constitutional duty to provide adequate medical treatment to those in custody by *not* contracting out its medical care and, instead, relying on informal relationships with physicians." *Id.* at 226 (citing *West,* 487 U.S. at 56). As the Fourth Circuit explained further:

> We believe that the Supreme Court's analysis [in *West v. Atkins*] applies also to private physicians who treat state prisoners without the benefit of a contract. Regardless of whether the private physician has a contractual duty or simply treats a prisoner without a formal arrangement with the prison, the physician's function within the state system is the same: *the state authorizes the physician to provide medical care to the prisoner, and the prisoner has no choice but to accept the treatment offered by the physician. Even where a physician does not have a contractual relationship with the state, the physician can treat a prisoner only with the state's authorization. If a physician treating a prisoner—whether by contract or by referral—misuses his power by demonstrating deliberate indifference to the prisoner's serious medical needs, the prisoner suffers a deprivation under color of state law.* The source of the deprivation does not change because the physician has no contractual relationship with the state: the physician acts under color of state law because the state has incarcerated the prisoner and denied him the possibility of obtaining adequate medical care on his own.

*Id.* (emphasis added).

Consistent with this analysis, courts have held that private physicians and medical entities may be considered state actors for purposes of Section 1983 liability when a state has delegated its obligation to provide medical care for inmates to those private entities, even in the absence of a contract. *See Carl v. Muskegon Cnty.*, 763 F.3d 592, 595-98 (6th Cir. 2014) (noting that "[a] state may not escape § 1983 liability by *contracting out or delegating* its obligation to provide medical care to inmates" and holding that a finding that a private physician did not act under color of state law would "incentivize the state to contract out, piece by piece, features of its prison healthcare system") (emphasis added); *McKenzie v. Jorizzo*, 2015 WL 127826, at *4 (D. Or. Jan. 6, 2015) ("[C]ourts have held that private physicians and medical entities are state actors

PAGE 10 – OPINION AND ORDER

for purposes of § 1983, when a state has delegated its obligation to provide medical care to inmates."); *Abraham v. Yarborough*, 2014 WL 1001436, at *6 (D.S.C. Mar. 13, 2014) ("The Court finds *West* and *Conner* controlling. The provision of medical services to prison inmates . . . is 'the state's exclusive prerogative for the same reason it is its constitutional duty: a prisoner has no alternative means of acquiring medical care other than those provided by the state.' Thus, if a healthcare provider demonstrates a deliberate indifference to a prisoner's serious medical needs, the prisoner suffers a deprivation under color of state law." (quoting *Conner*, 42 F.3d at 225)); *Tatsch-Corbin v. Feathers*, 561 F. Supp. 2d 538, 543 (W.D. Pa. 2008) (holding that private physician acted under color of state law, "regardless of . . . the contractual nuances through which she came to work at the prison"); *Anglin v. City of Aspen, Colo.*, 552 F. Supp. 2d 1229, 1242 (D. Colo. 2008) ("I hold a contractual relationship between a physician and the State is *not* required in order to find a physician acts under color of state law when treating an inmate.") (emphasis in original).

As Dr. Anderson notes, however, some courts have concluded that on some occasions private physicians providing medical care are *not* state actors for the purposes of Section 1983 liability. Two of the cases relied on by Dr. Anderson are not relevant to this case—*Wade v. Byles*, 83 F.3d 902, 906 (7th Cir. 1996) (analyzing a case that did not involve constitutionally-required inmate services) and *Cunningham v. Southlake Center for Mental Health*, 924 F.2d 106, 109 (7th Cir. 1991) (involving an employee of the institution, not an inmate).[5]

_____

[5] Dr. Anderson also relies on this Court's opinion in *Lantis v. Marion Cnty.*, 2014 WL 1910960, at *1 (D. Or. May 13, 2014). *Lantis* interpreted the Supreme Court's decision in *Minneci v. Pollard*, 132 S.Ct. 617 (2012), as foreclosing the proposition that a private physician providing medical services to inmates at a county jail could be held liable under Section 1983. Upon further consideration and review of *Minneci* and subsequent cases, the Court finds *Minneci* is not applicable to Section 1983 cases. In *Minneci*, the Supreme Court declined to extend *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), to find an implied cause of action

Dr. Anderson also cites to *Sykes v. McPhillips*, 412 F. Supp. 2d 197 (N.D.N.Y. 2006),

and *Vazquez v. Marciano*, 169 F. Supp. 2d 248 (S.D.N.Y. 2001). These cases are distinguishable

because they involved cases in which the doctors treated the plaintiffs on an emergency basis,

and the doctors were thus found not to be state actors. *See Sykes*, 412 F. Supp. at 203 ("This is

not to say that a hospital never could impliedly contract or acquiesce into a state actor role.

However, in the context of emergency services more is required to demonstrate an affirmative

relationship with a state entity to overcome the fact that a hospital is compelled provide

emergency care, and thus maintain what appears to be a relationship."); *Vazquez*, 169 F.

Supp. 2d at 251, 253-54 (finding doctor who treated an arrestee on an emergency basis and

---

under the Eighth Amendment against employees of a private company that operated a *federal* prison facility.

*Minneci* considered when the judicial branch should recognize an implied cause of action under *Bivens*. It is not relevant to Section 1983 cases, where Congress has already created a cause of action. After *Minneci*, courts continue to recognize the validity of Section 1983 claims against private medical service providers. *See, e.g.*, *O'Brien v. Mich. Dep't of Corrs.*, 592 F. App'x 338, 341-42 (6th Cir. 2014) (noting that a private entity that contracts to perform traditional state functions may be sued pursuant to Section 1983 and reversing the district court's dismissal of the plaintiff's Section 1983 claims based on inadequate medical care); *McKinney v. Lexington-Fayette Urban County Gov't*, 2015 WL 4042157, at *13 (E.D. Ky. July 1, 2015) ("*Minneci* does *not* hold that *state* prisoners seeking damages from privately employed personnel providing medical services at *local* prisons are barred from bringing actions under § 1983.") (emphasis in original); *Mangum v. Sevier Cnty., Tenn.*, 2015 WL 729524, at *4 (E.D. Tenn. Feb. 19, 2015) (declining to extend *Minneci* to Section 1983 claims against private medical care practitioners providing services to county jail); *Pruitt v. McConnell*, 2015 WL 632142, at *1 (M.D. Tenn. Feb. 13, 2015) ("But *Minneci* involved a *Bivens* claim against private employees of a privately operated federal prison, and it has been repeatedly held that *Minneci's* rationale does not extend to Section 1983 actions brought by state prisoners."); *Vensor v. Cent. Ariz. Corr. Facility*, 2014 WL 3516625, at *8 (D. Ariz. July 16, 2014) ("The *Minneci* decision does not explicitly or implicitly indicate that it was meant to affect § 1983 cases, and [the defendant] presents no legal authority or argument for extending *Minneci* to state prisoners' claims under § 1983."). *Minneci* did not mention *West*, and there is no indication that the Supreme Court meant to overturn *West's* holding that private medical practitioners may be considered state actors for purposes of Section 1983. *See Green v. Wexford Health Sources*, 2013 WL 139883, at *5 (N.D. Ill. Jan. 10, 2013) ("The Supreme Court did not, in *Minneci*, explicitly overturn a long line of established law on who may be a § 1983 defendant.").

requested blood and urine samples for purposes of determining whether the plaintiff had internal bleeding was not a state actor and was not performing a function traditionally reserved for the state).[6]

The Court notes other similar cases, which are likewise distinguishable from Plaintiff's case because they involve treating physicians who provided emergency medical services. *See, e.g.*, *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 827 (7th Cir. 2009) (noting that "private organizations and their employees that have only an incidental and transitory relationship with the state's penal system usually cannot be said to have accepted, voluntarily, the responsibility of acting for the state and assuming the state's responsibility for incarcerated persons. For instance, an emergency medical system that has a preexisting obligation to serve all persons who present themselves for emergency treatment hardly can be said to have entered into a specific voluntary undertaking to assume the state's special responsibility to incarcerated persons"); *Katorie v. Dunham*, 108 F. App'x 694, 698-699 (3rd Cir. 2004) (emergency room physician who treated arrestee and ordered a blood test to check for hypoglycemia, with no participation by state officials, was not a state actor); *Clewis v. Cal. Prison Health Care Servs.*, 2013 WL 2482521, at *1 (E.D. Cal. June 10, 2013) (noting that the nexus required for a private institution to be a state actor is not present "where, as here, a health care provider not contracted to the state has a preexisting commitment to serve all persons who present themselves for emergency treatment").

These cases suggest that providing emergency medical services or having an incidental or transitory relationship with the state's prison system simply is too attenuated a relationship to

---

[6] Dr. Anderson also cites to *Nunez v. Horn*, 72 F. Supp. 2d 24 (N.D.N.Y. 1999). *Nunez* concluded, without any analysis, that because the defendant physician did not have a contract with the state and treated the inmate in the physician's offices, the physician was not a state actor. The Court does not find the reasoning of *Nunez* to be persuasive.

characterize a physician's actions as voluntarily assuming to perform a function of the state. An emergency medical system has an obligation to serve all persons who present themselves for emergency treatment, and thus, because it cannot chose which patients to treat, it cannot be said to have "voluntarily" undertaken the responsibilities of the state to provide medical care to prisoners. *See Rodriguez*, 577 F.3d at 827; *Sykes*, 412 F. Supp. 2d at 203.

Dr. Anderson, however, is not an emergency room doctor. Based on the facts alleged by Plaintiff, Dr. Anderson had more than an "incidental and transitory relationship" with Plaintiff. Indeed, Dr. Anderson agreed to provide medical care to Plaintiff, a state prisoner. As alleged by Plaintiff, Dr. Anderson treats many prisoners who are referred to him by ODOC. Plaintiff saw Dr. Anderson on four separate occasions: once for the initial referral, again for the surgery, again for the pin removal, and once again after Plaintiff complained about pain lasting for months after the procedure. The fact that Plaintiff was sent back to Dr. Anderson by TRCI staff on multiple occasions, even after Plaintiff complained about the medical treatment he received from Dr. Anderson, suggests that Dr. Anderson "voluntarily"[7] accepted TRCI's delegation of its duty to provide Plaintiff's medical care. Considering the relationship between TRCI, ODOC, Plaintiff, and Dr. Anderson, the Court concludes that Plaintiff sufficiently alleges that Dr. Anderson effectively engaged in a public function by providing medical care to Plaintiff, a person involuntarily in the custody of the state.

The Court finds the reasoning of Fourth and Sixth Circuits detailed above to be persuasive, and, therefore, in the absence of applicable Ninth Circuit precedent, holds that Plaintiff's allegations plausibly suggest that Dr. Anderson acted under color of state law in

---

[7] The Court does not mean to suggest that Dr. Anderson was a "volunteer" or performed services without being paid, but merely that Dr. Anderson "voluntarily" chose to treat Plaintiff and was not treating Plaintiff on an emergency basis under which Dr. Anderson had no choice.

providing medical care to Plaintiff. Accordingly, Dr. Anderson's motion to dismiss Plaintiff's

Section 1983 claim on the basis that Dr. Anderson was not acting under color of state law is

denied.

### 2. Eighth Amendment

Dr. Anderson also argues that even if he can be considered a state actor, Plaintiff's

allegations constitute, at most, a claim of medical negligence, which is insufficient to state a

claim for a violation of the Eighth Amendment. Deliberate indifference to serious medical needs

constitutes unnecessary and wanton infliction of pain, which is proscribed by the Eighth

Amendment. *See Estelle*, 429 U.S. at 104; *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th

Cir. 2015). Dr. Anderson does not dispute that Plaintiff had a serious medical need, but argues

that Plaintiff insufficiently alleges deliberate indifference.

"To demonstrate deliberate indifference, plaintiffs must show that prison officials were

(a) *subjectively aware* of the serious medical need and (b) failed to adequately respond." *Rosati*,

791 F.3d at 1039 (emphasis in original) (quotation marks omitted). "Deliberate indifference may

appear when prison officials deny, delay or intentionally interfere with medical treatment, or it

may be shown by the way in which prison physicians provide medical care." *Colwell v.

Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quotation marks omitted). The Ninth Circuit

recently reaffirmed that "'[t]he requirement of deliberate indifference is less stringent in cases

involving a prisoner's medical needs than in other cases involving harm to incarcerated

individuals.'" *Chess v. Dovey*, 790 F.3d 961, 973-74 (9th Cir. 2015) (alteration in original)

(quoting *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled in part on other

grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)). In this

context, however, "[m]edical malpractice does not become a constitutional violation merely

because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Colwell*, 763 F.3d at 1066 (noting that deliberate indifference requires more than ordinary lack of due care).

Here, Plaintiff alleges more than an ordinary lack of due care. Plaintiff alleges that: (1) Dr. Anderson performed hand surgery on Plaintiff even though Dr. Anderson is not an accredited hand surgeon; (2) Dr. Anderson mislead Plaintiff into believing Dr. Anderson was qualified to perform Plaintiff's hand surgery; (3) Dr. Anderson lied in his medical records about how long it took to perform Plaintiff's pin extraction procedure; and (4) Dr. Anderson was not qualified to perform the hand surgery, the pin extraction, or the follow-up treatment. At this stage in the litigation, Plaintiff's allegations plausibly suggest that Dr. Anderson acted with deliberate indifference.

**B.  Jurisdiction**

Dr. Anderson also argues that, because Plaintiff's negligence claim against Dr. Anderson is a state law tort claim, the Court lacks subject matter jurisdiction over this claim. A federal district court, however, may assert supplemental jurisdiction over state law claims when those claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). "Nonfederal claims are part of the same 'case' as federal claims when they 'derive from a common nucleus of operative fact' and are such that a plaintiff 'would ordinarily be expected to try them in one judicial proceeding.'" *Trs. of Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003) (quoting *Finley v. United States*, 490 U.S. 545, 549 (1989)). The Court finds that Plaintiff's negligence claim against Dr. Anderson is sufficiently related to Plaintiff's Section 1983 claim against Dr. Anderson to support supplemental jurisdiction over Plaintiff's negligence claim.

Dr. Anderson alternatively argues that the Court should, under 28 U.S.C. § 1367(c)(2), decline to exercise supplemental jurisdiction of the negligence claim because the negligence claim "substantially predominates" over the Section 1983 claim. Jurisdictional decisions under 28 U.S.C. § 1367(c)(2) are discretionary. *See Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) (en banc) (noting that "a federal district court with power to hear state law claims has discretion to keep, or decline to keep, them under the conditions set out in § 1367(c)"). "Predomination under section 1367(c)(2) relates to the type of claim" and where "the state law claims essentially replicate the [federal] claims—they plainly do not predominate." *Lindsay v. Gov. Emps. Ins. Co.*, 448 F.3d 416, 425 (D.C. Cir. 2006). Here, Plaintiff's negligence claim substantially overlaps with his Section 1983 claim, and the Court finds that the negligence claim does not substantially predominate over the Section 1983 claim. At least at this stage of the litigation, the Court does not exercise its discretion to decline supplemental jurisdiction. Instead, the Court exercises its discretion to accept supplemental jurisdiction over Plaintiff's negligence claim.

## C.  Remand to State Court

Finally, Dr. Anderson moves to "remand the claims against him to Umatilla County Circuit Court." A motion to remand under 28 U.S.C. § 1447 is the proper procedure for challenging *removal* from a state court under 28 U.S.C. § 1441. *See Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). This case, however, was not removed from state court, instead, it was originally-filed in federal court. Because the Court may not "remand" to state court a case that was never removed to federal court, this motion is denied.

/ / /

PAGE 17 – OPINION AND ORDER

**CONCLUSION**

Dr. Anderson's Motion to Dismiss (Dkt. 35) is DENIED.

**IT IS SO ORDERED**.

DATED this 1st day of September, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge