IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ANTHONY MAGGIO**, <br><br> Plaintiff, <br><br> v. <br><br> **STEVEN SHELTON; LINDA GRUENWALD;** and **JOHN MICHAEL JEREMY ANDERSON**, <br><br> Defendants. | Case No. 2:14-cv-01682-SI <br><br> **OPINION AND ORDER** |

Lynn S. Walsh, Attorney at Law, 209 SW Oak Street, Suite 400, Portland, OR 97204. Of Attorneys for Plaintiff.

Ellen F. Rosenblum, Attorney General, Andrew Hallman, Assistant Attorney General, Department of Justice, 1162 Court Street NE, Salem, OR 97301. Of Attorneys for Defendants Steve Shelton, M.D. and Linda Gruenwald, N.P.

**Michael H. Simon, District Judge.**

Anthony Maggio ("Maggio") brings this prisoner civil rights action against Steven Shelton, M.D. ("Dr. Shelton"), Linda Gruenwald, N.P. ("Nurse Gruenwald"), and John Michael Jeremy Anderson, D.O. ("Dr. Anderson"). Dr. Shelton and Nurse Gruenwald are employees of the Oregon Department of Corrections (the "ODOC"). In Maggio's Amended Complaint, he

PAGE 1 – OPINION AND ORDER

alleges claims under 42 U.S.C. § 1983 and common law negligence arising from medical treatment following surgery on his right hand.

Before the Court is Dr. Shelton and Nurse Gruenwald's motion for summary judgment. Dr. Shelton and Nurse Gruenwald argue that Maggio failed to exhaust his administrative remedies under the Prison Litigation Reform Act (the "PLRA") before bringing his claims against them. Additionally, Maggio requests that the Court grant him summary judgment on the exhaustion issue under Federal Rule of Civil Procedure 56(f)(1).[1] For the reasons that follow, Dr. Shelton and Nurse Gruenwald's motion (Dkt. 49) is granted in part and denied in part, and Maggio's motion (Dkt. 54) is granted in part and denied in part.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for

---

[1] Federal Rule of Civil Procedure 56(f)(1) provides that a court may grant summary judgment for a nonmovant after giving the other party notice and a reasonable time to respond.

the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND[2]

At all times relevant to his Amended Complaint, Maggio was an inmate at the Two Rivers Correctional Institution ("TRCI") in Umatilla, Oregon.[3] In 2013, Maggio fractured his distal fourth metacarpal bone in his right hand. Nurse Gruenwald, a nurse practitioner and Maggio's primary care provider at TRCI, referred Maggio to an outside provider named Dr. Anderson for treatment of his injury. On May 28, 2013, Dr. Anderson performed surgery on Maggio's hand to repair the fracture. The surgery included the insertion of pins.

On July 1, 2013, TRCI brought Maggio to Dr. Anderson's office again, this time to remove the pins. According to Maggio, the pin removal procedure was prolonged and very painful because Dr. Anderson was unable to locate the pins in a prompt manner. Maggio asserts that the extraction was performed improperly and that he has suffered significant scarring, severe pain, and loss of function in his hand as a result. Maggio alleges that he complained about the scarring, pain, and loss of function to his medical providers at TRCI, but that he did not receive adequate treatment and follow-up care.

---

[2] Exhaustion of administrative remedies under the PLRA is an affirmative defense that properly is raised in a motion for summary judgment. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). "Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Id.* at 1170. Here, the parties have provided the Court with a limited evidentiary record that is mostly confined to facts regarding Maggio's grievances. Thus, in this Background section, the Court recites facts alleged in Maggio's Amended Complaint when describing the alleged events that give rise to his claims. When the Court refers to evidence in the record rather than Maggio's allegations, the Court provides a docket number and accompanying pinpoint citation.

[3] Maggio is now an inmate at the Snake River Correctional Institution in Ontario, Oregon. Dkt. 50 ¶ 3. His release date is October 13, 2016. Dkt. 55-2 at 1.

Although inmates are encouraged to communicate with prison staff verbally or in writing as their primary means of resolving disputes, TRCI also has grievance procedures in place that allow inmates formally to complain about any oversight or error affecting them, among other things. Dkt. 50 ¶ 7. The TRCI processes grievances in accordance with the Oregon Administrative Rules governing the ODOC Grievance Review System. *Id.* ¶ 6. The Inmate Orientation Packet, given to inmates when they first arrive at the facility, contains instructions for filing grievances. *Id.* ¶ 7. The inmate handbook also contains this information, and inmates can ask any housing officer for a grievance form. *Id.* An inmate may appeal any grievance response. *Id.* ¶ 9.

On April 9, 2014, Maggio filed four grievances with TRCI relevant to this action. *Id.* ¶¶ 11-14. In the first grievance, Maggio complains of ongoing pain and scarring in his right hand resulting from the surgery. *Id.* at 21. Maggio additionally states that a medical provider named Dr. Vrieson treated him that day, and that Dr. Vrieson informed Maggio that he should have gone to a hand specialist for the surgery. *Id.* In the second grievance Maggio filed on April 9, 2014, he complains that Dr. Anderson was not a specialist in the type of surgery that he performed on Maggio. *Id.* at 22. Maggio states that Dr. Shelton, the Medical Director of the ODOC, acted with deliberate indifference when he sent Maggio to a doctor who did not specialize in hand surgery, and that Maggio suffers pain and scarring as a result. *Id.* In both the first and second grievance, Maggio states that he wants to be seen by a hand specialist and that he wants to receive proper follow-up treatment. *Id.* at 21-22.

TRCI gave Maggio's first two grievances the same tracking number and denied them as untimely, citing Oregon Administrative Rule ("OAR") § 291-109-0150(2), which provides that

"the functional unit grievance coordinator must receive an inmate's grievance within 30 calendar days of the date of the incident giving rise to the grievance." *Id.* at 20-22.

The third grievance that Maggio filed on April 9, 2014, was nearly identical to the second grievance and contained the same allegations. *Id.* at 24. TRCI denied Maggio's third grievance because it was untimely under OAR § 291-109-0150(2). *Id.* ¶ 13. TRCI states that the third grievance was also improper because Maggio was attempting to file more than one grievance concerning a single incident. *Id.*; *see* OAR § 291-109-0140(5) ("An inmate may not file more than one grievance regarding a single incident or issue.").

The fourth grievance that Maggio filed on April 9, 2014, was nearly identical to the first grievance and contained the same allegations. *Id.* at 26. TRCI denied Maggio's fourth grievance because an inmate may not file more than one grievance regarding a single incident or issue. *Id.* at 25. TRCI states that the fourth grievance was also improper because it was untimely. *Id.* ¶ 14.

On May 9, 2014, Maggio attempted to appeal the denial of his April 9, 2014 grievances. *Id.* ¶ 15. TRCI denied Maggio's appeals because the ODOC does not permit inmates to appeal a grievance that was rejected for procedural reasons. *Id.* TRCI informed Maggio that he could resubmit his grievances within fourteen days if the procedural issues could be corrected. *Id.* Although Maggio attempted to file a second appeal, which TRCI denied, Maggio did not resubmit any of the April 9, 2014 grievances. *Id.*

Maggio filed this lawsuit on October 23, 2014. Dkt. 2. On December 8, 2014, TRCI sent Maggio to Dr. Anderson for a follow-up appointment. Dkt. 55-2 at 2. After the appointment, Dr. Anderson reported to Nurse Gruenwald that: "Considerations could be for referral to a hand specialist for evaluation of the intrinsic muscles, but once again at this point in time I am not sure if there would be any surgical solution." *Id.* On December 16, 2014, the Therapeutic Level of

Care Committee (the "TLC Committee"), which is a group of ODOC medical providers who review cases to determine whether an inmate will receive medical treatment, found that referring Maggio to a hand specialist was not medically necessary. *Id.* at 1. Dr. Shelton is a member of the TLC Committee and participated in the decision to deny Maggio a referral to a hand specialist. *See id.*

## DISCUSSION

In Maggio's Amended Complaint, he alleges two claims: (1) deliberate indifference and cruel and unusual punishment in violation of the Eighth Amendment, pursuant to 42 U.S.C. § 1983, against all Defendants ("First Claim"); and (2) common law negligence, against Dr. Anderson only ("Second Claim").[4] In his First Claim, Maggio alleges that Nurse Gruenwald was deliberately indifferent to Maggio's medical needs in the following ways: (1) failing to refer Maggio to a qualified hand specialist for surgery; (2) failing to refer Maggio to a qualified hand specialist after it became apparent that his hand properly was not healing; (3) failing to provide Maggio with adequate pain relief; and (4) failing to provide Maggio with medically acceptable treatment. Maggio also alleges that Dr. Shelton was deliberately indifferent to Maggio's serious medical needs because he denied Maggio any type of follow-up care.

Maggio additionally seeks declaratory and injunctive relief against Dr. Shelton arising from the TLC Committee's December 2014 decision to deny Maggio referral to a hand specialist. Maggio alleges that Dr. Shelton, while acting within his official position as Medical Director of the ODOC, has implemented unconstitutional policies and procedures for deciding

---

[4] Maggio's Amended Complaint labels his First Claim as against "Defendants Dow, Olson and Alexander," and his Second Claim as against "Defendant Johnson." Dkt. 25 at 4-5. The remainder of Maggio's Amended Complaint makes clear, however, that Maggio brings his First Claim against Gruenwald, Dr. Anderson, and Dr. Shelton, and his Second Claim against Dr. Anderson. *Id.* at 4-6. Thus, the Court considers the references to "Defendants Dow, Olson and Alexander" and "Defendant Johnson" to be scrivener's errors.

PAGE 6 – OPINION AND ORDER

when a prisoner may receive treatment from an outside medical provider. Maggio specifically alleges that the TLC Committee, of which Dr. Shelton is a member, considers the cost of the procedure and the amount of time that a prisoner has left on their sentence when deciding whether to provide a prisoner with necessary medical treatment. Maggio asserts that the TLC Committee inappropriately considered these factors when denying him a referral to a hand specialist in December 2014. Accordingly, Maggio requests a declaration that the policies and procedures applied by the TLC Committee are unconstitutional and injunctive relief prohibiting ODOC medical providers from applying the unconstitutional policies and procedures and refusing to refer Maggio to a hand specialist.

Dr. Shelton and Nurse Gruenwald move for summary judgment on the grounds that Maggio failed to exhaust his administrative remedies under the PLRA before bringing his claims against them. The PLRA provides in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement serves two primary purposes: to promote efficient resolution of disputes, and to protect agency authority by requiring adherence to agency procedures and by allowing agencies an opportunity to correct their own mistakes. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).

Nonexhaustion is an affirmative defense and defendants have the burden of "prov[ing] that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc). A remedy is "available" where it is "capable of use; at hand." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1171) (quotation marks omitted). If a defendant

meets the initial burden, a plaintiff then must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. Remedies are "effectively unavailable" where they are "ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Id.* (quoting *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). "[T]he ultimate burden of proof," however, never leaves the defendant. *Id.*

Dr. Shelton and Nurse Gruenwald argue that Maggio failed to exhaust his administrative remedies in three ways: (1) Maggio did not grieve his allegedly improper referral to Dr. Anderson in a timely manner; (2) Maggio never grieved his inadequate follow-up care and pain treatment allegations; and (3) Maggio never grieved his declaratory and injunctive relief allegations that the TLC Committee applies improper policies and procedures when deciding whether to provide inmates with medical treatment. Each argument is addressed in turn.

## A.  Referral to Dr. Anderson

Nurse Gruenwald argues that although Maggio filed several grievances concerning the ODOC's decision to send him to Dr. Anderson for treatment of his broken hand, the grievances were untimely because Maggio filed them more than thirty days after his surgery. Thus, Nurse Gruenwald argues Maggio failed to exhaust his administrative remedies for his allegations regarding the referral to Dr. Anderson.

Nurse Gruenwald argues that this case is analogous to *Albino v. Baca*, 697 F.3d 1023 (9th Cir. 2012), *rehearing en banc granted by Albino v. Baca*, 709 F.3d 994 (9th Cir. 2013). In *Albino*, the plaintiff argued that the grievance procedure was "unavailable" to him because the jail in which he was housed failed to inform him of the grievance procedure and he lacked subjective awareness of his administrative remedies. *Id.* at 1035. The original panel held, in part, that "for an inmate to claim that a prison's grievance procedure was effectively unavailable to

due to the inmate's unawareness of the procedure, the inmate must show that the procedure was not known and unknowable with reasonable effort." *Id.* at 1037. Nurse Gruenwald argues that it necessarily follows that an inmate's subjective lack of awareness of the underlying facts of a grievance does not render the administrative remedy "effectively unavailable" such that a failure to exhaust is excused. *See Albino*, 747 F.3d at 1172.

As an initial matter, the *Albino* panel opinion that Nurse Gruenwald refers to was vacated and ordered reheard en banc; thus, the panel opinion "shall not be cited as precedent by or to any court of the Ninth Circuit." *Albino v. Baca*, 709 F.3d 994, 994-95 (9th Cir. 2013). Upon rehearing en banc, the Ninth Circuit held that defendants failed to carry their burden of showing that administrative remedies at the jail were available because the jail staff never informed inmates, including the plaintiff, about grievance procedures. *Albino*, 747 F.3d at 1175-76. Thus, the *Albino* panel opinion is no longer good law.

Additionally, the *Albino* panel opinion involved the inmate's lack of knowledge of grievance procedures, and not a lack of knowledge regarding the facts giving rise to his claim. Here, Maggio alleges that he did not know that Dr. Anderson lacked appropriate qualifications for the surgery until Maggio spoke with Dr. Vrieson on April 9, 2014, and that Maggio immediately filed his second and third grievances regarding the referral to Dr. Anderson that same day. Maggio argues that the only logical date on which to begin the thirty-day time limit set by OAR § 291-109-0150(2) is the date of his conversation with Dr. Vrieson—that is, the date Maggio became aware of the nature of his injury. Maggio thus requests that the Court apply the "discovery rule" to his g regarding the referral to Dr. Anderson.

The Ninth Circuit has described the "discovery rule" as follows:

> Because it is inequitable to bar someone who has no idea he has
> been harmed from seeking redress, the statute of limitations has

PAGE 9 – OPINION AND ORDER

> generally been tolled by the "discovery rule." Under this rule, the statute only begins to run once a plaintiff has knowledge of the "critical facts" of his injury, which are "that he has been hurt and who has inflicted the injury." *United States v. Kubrick*, 444 U.S. 111, 122 (1979). In addition to being a rule of Oregon law, *see, e.g.*, *Gaston v. Parsons*, 318 Or. 247, 255-56 (1994), the discovery rule has been observed as a matter of federal law, *see Kubrick*, 444 U.S. at 120.

*Bibeau v. Pac. Nw. Research Foundation Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999) (footnote omitted). Maggio asserts that barring his constitutional claim on the grounds that he failed to raise the claim before it actually accrued would be inequitable. Maggio additionally asserts that barring his claim in such a manner may also violate his constitutional right to due process.

Nurse Gruenwald responds that the Ninth Circuit has never held that the "discovery rule" applies to grievance procedures for purposes of the PLRA's exhaustion requirement, nor has the Ninth Circuit held that an inmate's lack of knowledge of the basis for a potential grievance renders the grievance process "effectively unavailable" for purposes of exhaustion.[5] *See Albino*, 747 F.3d at 1172. Neither party has provided the Court with binding authority on this issue, nor has the Court been able to uncover any. The Ninth Circuit has suggested in dicta, however, that an inmate may lack a meaningful opportunity to exhaust when he does not have knowledge

---

[5] Nurse Gruenwald additionally argues that even if a lack of knowledge could make administrative remedies "effectively unavailable," *see Albino*, 747 F.3d at 1172, Maggio cannot demonstrate that discovering Dr. Anderson's lack of qualifications was a prerequisite to him filing a grievance concerning his surgery. Nurse Gruenwald refers to Maggio's statement that "I have been in pursuit of a resolution for my pain and scarring for over six months," which he makes in each of the four grievances he filed on April 9, 2014. Dkt. 50 at 21-22, 24, 26. Thus, Nurse Gruenwald asserts that Maggio could—and should—have filed a grievance prior to April 9, 2014.

Nurse Gruenwald does not dispute, however, that the thirty-day time limit is inapplicable to ongoing claims such as the denial of pain medication. *See* Dkt. 50 ¶ 19. Thus, although Maggio arguably could have grieved his ongoing complaints regarding pain management at an earlier point in time, he was not required to do so by the ODOC's Administrative Rules. Additionally, Maggio's allegation that Nurse Gruenwald failed to refer Maggio to a qualified hand specialist for his initial surgery is distinct from Maggio's allegations regarding his pain.

regarding the nature of his injury. In *Ngo v. Woodford*, 539 F.3d 1108 (9th Cir. 2008), the Ninth Circuit applied statute of limitations principles in determining whether a claim accrued for purposes of exhaustion under the PLRA. On December 22, 2000, the prison informed the plaintiff that he could not participate in the prison's special programs following his inappropriate activity with a prison church volunteer. *Id.* at 1109. On June 18, 2001, the plaintiff submitted a formal appeal of the prison's decision, which was denied as untimely because the California Code of Regulations requires inmates to file an appeal "'within 15 working days of the event or decision being appealed.'" *Id.* (quoting Cal. Code Regs. tit. 15, § 3084.6(c)). The plaintiff argued, in part, that 15 days did not give him a meaningful opportunity to exhaust his claim. *Id.* at 1110. The Ninth Circuit rejected this argument because the plaintiff "had every opportunity to appeal earlier because he knew the restriction's scope and duration as soon as the prison classification committee imposed it." *Id.* The Ninth Circuit noted that "[t]his is therefore not a case where the plaintiff lacked a meaningful opportunity to exhaust on the grounds that he 'fail[ed] to appreciate the . . . nature of [his] injuries.'" *Id.* (quoting *Felder v. Casey*, 487 U.S. 131, 146 (1988)) (alterations in original).

After *Ngo*, one district court in the Ninth Circuit considered the "discovery rule" when determining whether an inmate exhausted his administrative remedies under the PLRA. In *Olmos v. Ryan*, 2013 WL 394879 (D. Ariz. Jan. 31, 2013), the plaintiff alleged a due process violation regarding underpayment for work he performed in the prison, among other claims. *Id.* at *10. The defendants argued that the plaintiff did not exhaust his administrative remedies for his due process claim because the plaintiff's informal complaint concerning his pay rate was not filed in a timely manner. The plaintiff responded that he was unaware of his claim until the day when he filed the grievance, and that he could not be expected to challenge a problem of which he had no

knowledge. Citing *Ngo*, the court rejected the defendants' argument that because the inmate grievance procedures did not refer to a "discovery rule," no such rule could apply to the timeliness of a grievance. *Id.* at *11. The court found, however, that it could not "determine whether the discovery rule applies or, if it does, whether the grievance was timely" on the record before it. *Id.* Thus, the court denied the defendants' motion to dismiss the plaintiff's due process claim. *Id.* at *12.

The purpose of the PLRA's exhaustion requirement is twofold: to promote efficient resolution of disputes, and to protect agency authority by requiring adherence to agency procedures and by allowing agencies an opportunity to correct their own mistakes. *Woodford*, 548 U.S. at 89. Here, Maggio alleges that he had no knowledge regarding Dr. Anderson's alleged lack of qualifications until Dr. Vrieson informed him that Dr. Anderson was not a hand specialist and that Maggio should have been treated by a hand specialist. Later that same day, Maggio filed four grievances, two of which explicitly stated that Dr. Anderson was not a specialist in the type of surgery that Maggio received and that ODOC officials acted with deliberate indifference when they sent Maggio to Dr. Anderson for the surgery.

Maggio notified the prison of his claim and alleges that he did so as soon as he became aware of the underlying facts. Thus, this is not a case where a plaintiff "'disregard[ed] . . . [the agency's] procedures.'" *Id.* at 89 (third alteration in original) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Because Maggio grieved his allegation that he improperly received surgery from an unqualified medical provider, the prison had the opportunity efficiently to resolve the dispute and to correct its own mistake. *See id.* Thus, Maggio's actions were not contrary to the purpose of the PLRA's exhaustion requirement.

The Court declines to find that Maggio's claims regarding the referral to Dr. Anderson are barred because he failed to raise them in a grievance within thirty days of his surgery. Such a finding would not promote the purposes of the PLRA's exhaustion requirement, but would be inequitable and would ignore "the serious impact on prisoners with legitimate claims who are unrepresented, unschooled in litigation, and often ill-equipped to negotiate an administrative system far harsher in its procedural requirements than state or federal courts." Kermit Roosevelt III, *Exhaustion Under the Prison Litigation Reform Act: The Consequence of Procedural Error*, 52 Emory L.J. 1771, 1813 (2003).

Nurse Gruenwald has not presented any evidence that Maggio knew or should have known about the allegedly improper referral to Dr. Anderson prior to Maggio's conversation with Dr. Vrieson on April 9, 2014. Thus, based upon the record evidence, there is no genuine issue that Maggio knew, or should have known, about the allegedly improper referral to Dr. Anderson prior to the date that he filed his grievances. Accordingly, the Court finds that Maggio "fail[ed] to appreciate the . . . nature of [his] injur[y]" regarding the allegedly improper referral until April 9, 2014, the date that he filed his grievances, and that thus his claim accrued on this date. *See Ngo*, 539 F.3d at 1110 (quotation marks omitted) (fourth alteration added); *Bibeau*, 188 F.3d at 1108.

The thirty-day time limit set by OAR § 291-109-0150(2) should have begun on April 9, 2014. Thus, Maggio's grievances regarding the referral to Dr. Anderson were improperly screened as untimely. Accordingly, the Court finds that Maggio is excused from exhausting his administrative remedies for his allegations regarding follow-up care and inadequate pain treatment. *See Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010) (holding "that improper

screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under the PLRA.").

**B. Follow-Up Care**

Dr. Shelton and Nurse Gruenwald argue that Maggio failed properly to grieve any issues regarding follow-up care or inadequate pain treatment, and that thus Maggio did not exhaust his administrative remedies for his follow-up care and inadequate pain treatment allegations. Dr. Shelton and Nurse Gruenwald assert that although Maggio referenced his ongoing pain in his first grievance and requested follow-up treatment, Maggio clearly directed his complaints toward the ODOC's initial decision to refer him to Dr. Anderson. Thus, Dr. Shelton and Nurse Gruenwald argue that the ODOC properly denied Maggio's first grievance as untimely.

The Court disagrees. Although Maggio's second and third grievances were directed toward the ODOC's initial decision to refer Maggio to Dr. Anderson, Maggio's first grievance discuss his inadequate pain treatment and desire for follow-up care more generally. In Maggio's first grievance, he states: "Several months after the operation I'm experiencing pain in the operated area. Further, I now have protracted disfigurement (scarring) on my right hand that needs plastic surgery. Today . . . I was informed by Dr. Vrieson that I should have went to a hand specialist." Dkt. 50 at 21. Maggio states that although he had "been in pursuit of a resolution for [his] pain and scarring for over sixth months. . . . [T]oday was the first day a Provider (Vrieson) gave me treatment" and prescribed him pain medication. *Id.* Maggio requests "to be seen by a specialist specifically for the hand, and any necessary follow-up treatment. . . . [and] compensation for my protracted disfigurement and pain." *Id.* Although Maggio mentions in his first grievance that he should have gone to a hand specialist, he does so in one sentence. The remainder of the grievance includes repeated references to his pain and scarring and a specific

request for follow-up treatment. Thus, his grievance was not clearly directed toward the referral to Dr. Anderson, as Dr. Shelton and Nurse Gruenwald argue.

The Ninth Circuit has instructed that "[a] grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress. To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations." *See Sapp v. Kimbrell*, 623 F.3d at 824 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)). Here, OAR § 291-109-0140(1)(b) requires that "[a]n inmate grievance must include a complete description of the incident, action, or application of the rule being grieved, including date and approximate time." Maggio's first grievance described when and where his surgery took place, his ongoing pain and scarring in the operated area, the fact that he did not receive any pain medication until that day, and his desire to see a hand specialist and receive proper follow-up treatment. Dkt. 50 at 21. Thus, Maggio's first grievance put the prison on notice of his complaints regarding follow-up care and inadequate pain treatment.

Dr. Shelton and Nurse Gruenwald argue that the ODOC was not required to parse Maggio's statements concerning pain and follow-up care from his sentence stating that Dr. Vrieson told him that he should have gone to a hand specialist. Dr. Shelton and Nurse Gruenwald point to OAR § 291-109-0140(1)(d), which requires that: "An inmate grievance may request review of just one matter, action or incident per inmate form." According to Dr. Shelton and Nurse Gruenwald, the ODOC informed Maggio that he could resubmit the grievance if the new version complied with the grievance procedural rules, and that Maggio could have resubmitted the grievance and addressed only his timely complaints regarding follow-up care and pain medication.

Maggio's first grievance, however, was not denied for failure to comply with OAR § 291-109-0140(1)(d). Rather, the ODOC denial letter only discussed OAR § 291-109-0150(2), requiring that an inmate file a grievance within thirty days of the date of the incident giving rise to the grievance. The ODOC did not inform Maggio that he could have corrected any procedural error by omitting the sentence stating that he should have gone to a hand specialist.

Maggio adequately grieved his follow-up care and pain medication issues. Dr. Shelton and Nurse Gruenwald agree that Maggio's claims about follow-up care and inadequate pain treatment were ongoing and not barred by OAR § 291-109-0150(2). Thus, Maggio's first grievance was improperly screened as untimely. Accordingly, the Court finds that Maggio is excused from exhausting his administrative remedies for his allegations regarding follow-up care and inadequate pain treatment. *See Sapp*, 623 F.3d at 823 (holding "that improper screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under the PLRA.").

**C. TLC Committee Policies and Procedures**

Dr. Shelton argues that Maggio never grieved the TLC Committee's December 2014 decision denying Maggio a referral to a hand specialist, and that as a result Maggio failed to exhaust his administrative remedies regarding his declaratory and injunctive relief allegations against Dr. Shelton. Maggio responds that he was not required to grieve his allegations regarding the TLC Committee's decision to deny him a referral to a hand specialist because he had already filed grievances regarding the lack of follow-up care and his desire to see a hand specialist.

Maggio relies on *Parzyck v. Prison Health Services, Inc.*, 627 F.3d 1215 (11th Cir. 2010), in which the Eleventh Circuit held that an inmate was not required "to file new grievances addressing every subsequent act by a prison official that contributes to the continuation of a problem already raised by an earlier grievance" in order to exhaust his administrative remedies.

PAGE 16 – OPINION AND ORDER

*Id.* at 1219. *Parzyck*, however, is distinguishable from this case. Here, Maggio's declaratory and injunctive relief allegations concern the policies and procedures that the TLC Committee used in making its December 2014 decision to deny Maggio a referral. These allegations are distinct from Maggio's April 2014 grievances regarding the lack of appropriate follow-up care and Maggio's desire to see a specialist, and thus were not "already raised by an earlier grievance." *Id.* Because Maggio never grieved his complaints regarding the TLC Committee's decisionmaking process, the prison was not put "on adequate notice of the problem for which [Maggio] seeks redress." *See Sapp*, 623 F.3d at 824.

Maggio's argument that he was unable to grieve his declaratory and injunctive relief allegations because he cannot grieve matters that are currently pending in litigation under the ODOC Administrative Rules is also unavailing. *See* OAR § 291-109-0140(3)(i) (stating that an inmate cannot grieve "[c]laims or issues that the inmate is pursuing in pending litigation in state or federal courts"). Dkt. 50 at 11-12. As Dr. Shelton points out, Maggio could have grieved the procedures that the TLC Committee used in making its December 2014 decision up until the point that those allegations were included in his Amended Complaint, which was filed on March 30, 2015.[6] Dkt. 25. Accordingly, the Court finds that Maggio did not properly and timely grieve his declaratory and injunctive relief allegations, and thus Dr. Shelton has met his burden of proving that Maggio failed to exhaust his administrative remedies regarding those allegations.

## CONCLUSION

Dr. Shelton and Nurse Gruenwald's motion (Dkt. 49) is GRANTED IN PART and DENIED IN PART. Dr. Shelton and Nurse Gruenwald's motion is granted with respect to

---

[6] The Court notes, however, that Maggio's grievance would still presumably have to comply with OAR § 291-109-0150(2), requiring that an inmate file a grievance "within 30 calendar days of date of the incident giving rise to the grievance."

Maggio's declaratory and injunctive relief claim against Dr. Shelton. Dr. Shelton and Nurse Gruenwald's motion is denied with respect to Maggio's allegations regarding the referral to Dr. Anderson and Maggio's allegations regarding follow-up care and pain treatment. Maggio's motion under Fed. R. Civ. P. 56(f)(1) (Dkt. 54) is GRANTED IN PART and DENIED IN PART. Maggio's motion is granted with respect to Maggio's allegations regarding the referral to Dr. Anderson and Maggio's allegations regarding follow-up care and pain treatment. Maggio's motion is denied with respect to his declaratory and injunctive relief claim against Dr. Shelton.

**IT IS SO ORDERED**.

DATED this 25th day of February, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge